NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar No. 281703)
AARON FRUMKIN (Cal Bar No. 308479)
Assistant United States Attorney
General Crimes Section
    1200/1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0487/6799
    Facsimile: (213) 894-6269
    E-mail:    rachel.agress@usdoj.gov
               aaron.frumkin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>MELINDA ROMINES,<br><br>      Defendant. | CR No. 20-00069-CJC-1<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE AND DISCOVERY RE INFORMANTS<br><br>**MOTION HEARING DATE: 11/02/2020** |

       Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California Nicola T. Hanna and Assistant United States Attorneys Rachel Agress and Aaron Frumkin, hereby files its Response and Opposition to Defendant Melinda Romines's ("defendant") Motion For Disclosure And Discovery Re Informants (Dkt. 83) ("Motion").

       This Opposition is based upon the attached memorandum of points

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 19, 2020          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 BRANDON FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                 _____/s/_____
                                 RACHEL AGRESS
                                 AARON FRUMKIN
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

TABLE OF AUTHORITIES..................................................ii

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>................................1

I.   INTRODUCTION.....................................................1

II.  BACKGROUND.......................................................2

     A.   Factual Background.........................................2

          1.   <u>Offense Conduct:  Sales to a CI</u>....................2

          2.   <u>Offense Conduct:  Sales to an ATF Undercover
               Agent ("UC") Introduced to Defendant by the CI</u>......3

     B.   Procedural Background......................................5

     C.   Current Motion to Compel Alleging Entrapment and CI
          Misconduct.................................................5

     D.   The Government's Prior Productions Relating to the CI,
          Attempts to Investigate Allegations Made by Defense
          Counsel, and Recovery Efforts.............................7

     E.   Independent Evidence Corroborates Information Provided
          by the CI to the Government...............................8

III. ARGUMENT........................................................10

     A.   Defendant's Demands that Should be Denied as Moot........13

     B.   Defendant's Demands that Should be Denied as Overbroad
          or Irrelevant.............................................16

IV.  CONCLUSION......................................................18

i

1

**TABLE OF AUTHORITIES**

2 | DESCRIPTION | PAGE

3 Cases

4 Brady v. Maryland,

5   373 U.S. 83 (1963) ....................................... 5, 11, 17

6 Giglio v. United States,

7   405 U.S. 150 (1972) ..................................... 11, 17, 18

8 Kaley v. United States,

9   571 U.S. 320 (2014) ............................................. 10

10 Pennsylvania v. Ritchie,

11   480 U.S. 39 (1987) ......................................... 11, 17

12 Rovario v. United States,

13   353 U.S. 53 (1957) ...................................... passim

14 United States v. Aguilar,

15   No. CR 07-0030SBA, 2007 WL 4219370 ............................. 12

16 United States v. Bonilla,

17   615 F.2d 1262 (9th Cir. 1980) ............................. 12, 16

18 United States v. Devin Bass,

19   No. CR 16-00056-GMN-GWF, 2017 WL 11456614 ...................... 12

20 United States v. Gonzalo Beltran,

21   915 F.2d 487 (9th Cir. 1990) .............................. 12, 16

22 United States v. Johnson,

23   886 F.2d 1120 (9th Cir. 1989) ............................. 12, 17

24 United States v. Little,

25   753 F.2d 1420 (9th Cir. 1984) ................................. 11

26 United States v. Mandel,

27   914 F.2d 1215 (9th Cir. 1990) ................................. 11

28

ii

DESCRIPTION                                                                                              PAGE

United States v. Sanchez,

  908 F.2d 1443 (9th Cir. 1990)....................................12

United States v. Stinson,

  647 F.3d 1196 (9th Cir. 2011)....................................11

United States v. Williams,

  898 F.2d 1400 (9th Cir. 1990)....................................12

Weatherford v. Bursey,

  429 U.S. 545 (1977)..............................................10

Rules:

Fed. R. Crim. P. 16...........................................5, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant MELINDA ROMINES ("defendant") has moved to compel the immediate disclosure and production of information relating to the confidential informant ("CI") in this case.  In support of that Motion, defendant filed a declaration under seal and in camera, which the government has not seen and to which it thus cannot respond.  The CI is still active with multiple law enforcement agencies and the government has a strong interest in protecting the CI and preserving the CI's confidential status.  Defendant's motion seeks to dramatically expand the government's discovery obligations beyond that mandated by law in order to conduct a fishing expedition relating to vaguely formed allegations of entrapment.  Many of defendant's demands seek information with no logical connection to this case.

Nevertheless, the government takes seriously defendant's allegations and has made extensive disclosures and produced discovery well beyond the scope of its discovery obligations under law.  The government recently conducted a comprehensive interview of the CI and asked the CI questions specifically requested by defense counsel.  The report of that interview has been produced to defense counsel, along with substantial additional discovery relating to the CI.  In fact, many of defendant's numerous discovery demands have now been satisfied by the government's disclosures, as detailed in Section III.A below.  Accordingly, defendant's Motion with respect to those demands should be denied as moot.

The remaining demands to which the government now objects call for disclosures far beyond the requirements imposed by law, as

detailed in Section III.B below.  The government has fully complied with its obligations under <u>Brady</u> and will continue to fulfill those obligations on an ongoing basis.  The government has already provided ample discovery relating to the CI, including by conducting an interview and asking the CI questions requested by defense counsel, and defendant has not demonstrated how her remaining demands would be material to the preparation of her defense, guilt, or punishment.  What is more, the government has provided early disclosure that it does not intend to call the CI as a witness; accordingly, any demands seeking impeachment information should be denied as inapposite.  Because these demands call for disclosures not required by law and would needlessly endanger the CI, defendant's Motion with respect to these demands should be denied.

## II.  BACKGROUND

### A.   Factual Background

#### 1.    <u>Offense Conduct:  Sales to a CI</u>

The CI first engaged defendant on social media, after identifying her as a potential target based on photographs of defendant holding firearms.  When the CI reach out to defendant, the CI used the pretext of potential romantic interest.  The CI then met defendant in person at a coffee shop and defendant told the CI that she could obtain any illegal drugs or firearms that the CI wanted.  The CI elected to pursue firearms due to his/her work with ATF.  The initial interactions between the CI and defendant are memorialized in preserved Instagram communications and Reports of Investigation regarding debriefings of the CI.

On May 17, 2018, defendant sold the following to the CI for $2,600: (1) a .556 X .45 Caliber homemade AR-15-style rifle with no

make, model or serial number, that was not assembled (in two parts), along with a magazine containing 20 live rounds of .300 blackout ammunition; (2) a .40 caliber homemade handgun, with no make, model, or serial number and (3) a silencer. Three calls leading up to the sale and the entire sale were recorded, and those recordings as well as the draft transcripts have been produced to defense counsel, in addition to Report of Investigations describing the sale. As set out in Section II.E, the government has made and continues to make efforts to recover the CI's iMessage communications with defendant regarding this sale.

In addition, the CI contemporaneously communicated with a designated ATF officer (the "ATF handler") about his/her interactions with defendant, including the type of contraband that defendant was offering to sell. The CI's communications with the ATF handler about setting up the deal were memorialized in Reports of Investigation, which have been produced to defense counsel. The government also has recovered certain of the CI's communications with ATF from this period, and produced them.

**2. Offense Conduct:  Sales to an ATF Undercover Agent ("UC") Introduced to Defendant by the CI**

Contemporaneous communications with the CI's ATF handler show that the CI introduced defendant to an ATF Undercover Agent (the "UC") as someone to whom the CI brokered contraband, based on instructions from the CI's ATF handler. On October 10, 2018, the CI and UC met with defendant and co-defendant Benson to purchase contraband from defendant and Benson and/or their source. After the source took too long to arrive, however, the CI and UC left. That

meeting was recorded via video with audio and the video and
accompanying draft transcripts have been provided to defense counsel.

Following the October meeting, the UC communicated directly with
defendant and arranged to purchase additional firearms and
methamphetamine. Specifically, on October 22, 2018, defendant and
codefendant Benson sold the UC a Sig Sauer P220 .45 caliber pistol
with serial number G223857, and seven rounds of .45 caliber
ammunition for $900. On October 23, 2018, the UC paid defendant and
co-defendant Benson $1,800, and in exchange, the UC received four
ounces of methamphetamine on that date, and another four ounces on
November 7, 2018. These transactions form the exclusive basis for
Counts Three and Four of the Indictment. A significant portion of
the UC's text communications with defendant were preserved, in
addition to calls, and the communications were further memorialized
in Reports of Investigation, all of which were produced to defense
counsel.

The CI continued to communicate with his/her ATF handler about
communications with defendant during this period. As set out in
Section II.D, the government has recovered certain of the CI's
communications with ATF from this period, and produced them. In
addition, the government has partially preserved records of certain
iMessage communications with defendant during this period, and has
made and continues to make efforts to recover the remaining CI's
iMessage communications with defendant. See infra at Section II.E
(discussing recovery efforts). Based on reporting from the CI,
preserved iMessages with the CI's ATF handler, and the CI's tolls,
the CI and defendant ceased communications in or about December 2018.

## B. Procedural Background

The Indictment in this case was filed on February 4, 2020. (Dkt. 1.) Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on February 10, 2020, and was released on bond pending trial. (Dtk. 12.) The Indictment charges defendant with violations of 18 U.S.C. § 371: conspiracy to willfully engage in the business of dealing in firearms without a license (18 U.S.C. § 922(a)(1)(A)); 26 U.S.C. § 5861(d): possession of an unregistered firearm, based on the sales of firearms to the CI and the UC, and two counts of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) distribution of methamphetamine, based on the sale of narcotics to the UC.

Initial discovery was produced in April 2020, and the majority of the evidence directly relating to the charged offenses was produced in May 2020. The government has continued to supplement its discovery, as appropriate. The discovery already provided includes more than 1,000 pages of discovery, including more than 100 pages of written reports, photographs, text messages, and Instagram communications, more than 300 pages of tolls, and approximately 300 pages of audio and video transcripts, along with more than thirty underlying audio and video recordings. The government also provided early notice that it does not intend to call the CI as a witness at trial.

## C. Current Motion to Compel Alleging Entrapment and CI Misconduct

On August 27, 2020, defendant filed defendant's Motion for an Order to Compel Discovery (Dkt. No. 83) ("Motion"), alleging, among other things, that the government's discovery obligations pursuant to

Fed. R. Crim. P. 16, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act and <u>Rovario v. United States</u>, 353 U.S. 53, 64-65 (1957), require disclosure of thirty broad categories of information relating to the CI, including the CI's identity, location, and present whereabouts, and impeachment evidence relating to the CI, even though the government does not intend to call the CI as a witness. (Mot. to Compel, <u>passim</u>.)

In addition, in her motion and in other communications with the government, defendant has alleged that the CI failed to inform the government that defendant and the CI were in a sexual relationship during the timeframe of the offense conduct and that the CI entrapped defendant by claiming that the CI would be in danger if defendant refused to deal in contraband. (Mot. to Compel at 1-2.) Defendant also claims that the CI has attempted to eliminate evidence of entrapment. In support of that Motion, defendant filed a declaration under seal and <u>in camera</u>. Defendant's motion requested a hearing on the motion be set for November 2, 2020. (<u>Id.</u> at 1.)

As set out below in Section III, the government believes its disclosures have complied with and in fact exceeded its discovery obligations – the government has made extensive disclosures regarding the CI and sought to recover and produce evidence going well beyond the scope of its discovery obligations. In addition, as set out below in Section II.E, while the government has not seen and thus cannot respond to specific factual allegations by defense counsel, contemporaneous communications, tolls, and recordings all corroborate the CI's statements.

## D. The Government's Prior Productions Relating to the CI, Attempts to Investigate Allegations Made by Defense Counsel, and Recovery Efforts

The government has already provided or is in the process of preparing to produce to defense counsel all preserved and/or recorded communications between the CI and defendant that are currently in the government's possession.[1]  The government has also produced all Reports of Investigation relating to the CI's interactions with defendant.

In addition, notwithstanding that the government has provided early disclosure that it does not intend to call the CI to testify, the government has provided defense counsel with information related to benefits provided to the CI in his/her role as a confidential informant for ATF generally as well as in connection with this case specifically.  In addition, the government has provided a summary of the CI's criminal history and a redacted criminal history report.

What is more, the government conducted an extensive in-person interview of the CI on October 2, 2020.  During that interview, the government questioned the CI at length about the CI's communications with defendant and the CI's conduct in relation to defendant in this case, as well as the various allegations of misconduct and entrapment made by defense counsel, as described above.  The information relayed during that interview is memorialized in a Report of Investigation that has been produced to defense counsel and is discussed in substance below in Section II.E.

Finally, even though it falls well beyond the purview of its legal obligations, the government has undertaken additional

---

[1] The exception is one narrow set of communications that could reveal the CI's true identity, which will be produced prior to trial.

investigative efforts to recover certain of the requested data, and the government is continuing to make efforts to so.  The government intends to disclose and/or produce in advance of trial any such responsive data that can be recovered.  Those efforts included running searches for data on a forensic copy of the CI's current iPhone and attempting to access the Apple iCloud account used by the CI during the relevant period using a password provided by the CI.  When these efforts were unsuccessful, the government served a search warrant on Apple to seize responsive iMessages in the CI's iCloud.  That warrant returned certain iMessages between the CI and his/her ATF handler regarding this case,[2] as well as communications between the CI and the UC regarding this case, which are being produced to defense counsel.  That warrant returned limited preserved iMessages between defendant and the CI, which are being prepared for production to defense counsel.  The government also issued trial subpoenas for tolls from defendant's cell service provider during the timeframe of the offense conduct.  The returns on that subpoena have been produced to defense counsel.

**E.      Independent Evidence Corroborates Information Provided by the CI to the Government**

While the government has not seen and thus cannot respond to specific factual allegations contained in defendant's <u>in camera</u> declaration, contemporaneous communications, tolls, and recordings align with both the CI's prior statements and the CI's statements made during the recent interview with the government.

---

[22]  The government is currently undertaking efforts to recover additional communications between the CI's phone and the phone of his/her ATF handler.

During the in-person interview conducted on October 2, 2020, the government questioned the CI about defendant's allegations that the CI told defendant that he/she was being threatened to supply guns and drugs to others, or told defendant that the CI's or defendant's life was in danger. (Mot. to Compel at 1-2). In response, the CI has emphatically stated that he/she had never told defendant that the CI or defendant would be in danger if defendant did not engage in criminal conduct. The CI stated that defendant never suggested that she believed she was in danger; to the contrary, defendant always appeared in control while negotiating and facilitating the deals underlying the charges against her. The government also questioned the CI extensively about the nature of his/her relationship with defendant, including defendant's allegations that the CI entered into a sexual relationship with the defendant. (See Mot. to Compel at 1-2). During the interview, the CI verified that at no point during this investigation, (nor at any time) did he/she become romantically involved with defendant. The CI also stated that his/her ATF handler clearly directed the CI not to be intimate with defendant.

The government also questioned the CI about the methods used to communicate with defendant, the CI's practices for preserving communications with defendant, and the CI's practices for reporting communications with defendant to his/her ATF handler. The CI explained that he/she primarily communicated with defendant using the phone number XXX-XXX-6673, via calls, FaceTime and iMessages, on his/her iPhone. The CI stated that he/she would conference in the ATF handler where possible, would screenshot iMessages which he/she believed were important to the case and send them to the ATF handler, and would notify the ATF handler about communications with defendant.

When questioned about whether the CI ever deleted iMessages from defendant, the CI explained that he/she deleted certain revealing photos sent by defendant, because the CI was concerned about his/her family inadvertently seeing those photos.  The CI stated that he/she does not recall deleting other messages from defendant; to the extent other messages to/from defendant were deleted from his/her phone, it was inadvertent.

Defense counsel has also asked the government to investigate certain location screenshots provided by the CI to the government during the course of the investigation.  The CI initially represented to the ATF handler that defendant shared her location with the CI while she was gun-shopping late at night in Compton and Watts.  The government has taken these allegations seriously and undertaken investigation, at counsel's request.  At the October 2, 2020 in-person interview, the government questioned the CI about the screenshots, and reaffirmed that the screenshots reflect defendant's location at the times those pins were sent, where defendant was procuring guns and/or drugs.  In addition, the government has reviewed recorded conversations in which defendant admits going to Watts with co-defendant Benson to shop for firearms.  The government also subpoenaed defendant's cell phone service provider, and those tolls in fact corroborate that defendant was out late at night in Compton and Watts, as defendant admitted in the recorded conversations.  These tolls have been produced to defense counsel.

**III. ARGUMENT**

"There is no general constitutional right to discovery in a criminal case."  <u>Kaley v. United States</u>, 571 U.S. 320, 335 (2014) (quoting <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977)).  There are

two sources of the government's discovery obligations in a criminal case that are relevant to the instant motion. First, Rule 16 of the Federal Rules of Criminal Procedure establishes guidelines for pretrial production by the government, as well as reciprocal discovery by the defendant, of certain limited material, including items "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Under Rule 16(a)(1)(C), a defendant is entitled to documents that she can show are material to the preparation of her defense. Defendant, however, must make a prima facie factual showing that the information sought is material. See e.g., United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990); United States v. Little, 753 F.2d 1420, 1445 (9th Cir. 1984). Defendant cannot establish materiality by a general description of the documents sought, or by a conclusory argument that the requested information is material to the defense. Mandel, 914 F.2d at 1219.

Second, under Brady v. Maryland, 373 U.S. 83, 87 (1963) and Giglio v. United States, 405 U.S. 150, 154 (1972), the government must turn over to the defense evidence in its possession that is favorable to the defense or that may be used by the defense for impeachment purposes. However, Brady, Giglio, and its progeny do not require the government to disclose neutral, irrelevant, speculative, or inculpatory evidence. See, e.g., United States v. Stinson, 647 F.3d 1196, 1208 (9th Cir. 2011). A defendant's allegation that the requested information might be material does not entitle her to an unlimited or unsupervised search of the government's files. See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).

The Supreme Court has explicitly recognized a government privilege to withhold from disclosure the identity of persons who

11

furnish information regarding violations of law. <u>Rovario</u>, 353 U.S. at 59. The purpose behind this privilege is to effectuate the public interest in law enforcement and encourage citizens to communicate their knowledge of the commission of crimes to law enforcement officials. <u>Id.</u> The Ninth Circuit has articulated a three-pronged balancing test to address whether disclosure of identifying information regarding a CI is required: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between defendant's asserted defense and the likely testimony of defendant; and (3) the government's interest in non-disclosure. <u>United States v. Gonzalo Beltran</u>, 915 F.2d 487, 488-89 (9th Cir. 1990). It is defendant's burden to prove the need for disclosure of identifying information regarding the CI. <u>United States v. Sanchez</u>, 908 F.2d 1443, 1451 (9th Cir. 1990); <u>United States v. Williams</u>, 898 F.2d 1400, 1402 (9th Cir. 1990). The government has a compelling interest in protecting the safety of a CI and the confidentiality of a CI's identity to enable the CI's continued operation. <u>Gonzalo Beltran</u>, 915 F.2d at 489. The "mere suspicion that information will prove helpful is insufficient to require disclosure." <u>United States v. Johnson</u>, 886 F.2d 1120, 1122 (9th Cir. 1989).

A defendant is not entitled to have a CI produced in advance of trial. <u>United States v. Bonilla</u>, 615 F.2d 1262, 1264 (9th Cir. 1980). Moreover, even where "[a] defendant is entitled to learn the identity of an informer" because the informant is a "percipient witness," courts have held that disclosure of the CI's identity five days to a week before trial is sufficient. <u>See</u>, <u>e.g.</u>, <u>United States v. Aguilar</u>, No. CR 07-0030SBA, 2007 WL 4219370, at *5 (N.D. Cal. Nov.

28, 2007) (in a case involving an entrapment defense, denying defendant's motion to compel earlier disclosure of CI information where government acknowledged CI was a percipient witness, and offered to disclose seven days prior to trial); United States v. Devin Bass, No. CR 16-00056-GMN-GWF, 2017 WL 11456614, at *3 (D. Nev. Mar. 8, 2017) (denying defendant's motion to compel earlier disclosure of CI information where government offered to disclose five days prior to trial).

Defendant's motion includes thirty separate categories of discovery demands. (See Motion at 1-12.) For many of defendant's demands, defendant has failed to articulate any factual basis to support how the information sought would be material to her defense. Other demands appear directed exclusively to impeachment information. Because the government has disclosed that it does not intend to call the CI as a witness at trial, however, such requests are inapposite. Nevertheless, out of an abundance of caution and in good faith, as described above, the government has undertaken to make extensive disclosures regarding the CI, going well beyond its legal obligations. As a result, many of defendant's discovery demands should be denied as moot, as detailed in Section A below, because the government has either already disclosed the requested material or is aware of no such material in its possession or control in connection to this case. The remaining demands should be denied, as detailed in Section B below.

**A.     Defendant's Demands that Should be Denied as Moot**

Defendant's demands (b), (d), (e), (f), (g), (h), (i), (j), (t), (v), and (ad) should be denied as moot. (See Motion at 1-11.)

As to demand (b), which seeks identifications of defendant by the CI, the government has disclosed all known responsive material that is within its possession or control.

As to demand (d), which generally seeks information regarding benefits provided to the CI, the government has disclosed the governing CI Agreement for the CI's work with ATF, a redacted version of the CI's criminal history, the total compensation the CI has received for the CI's work for ATF, and the exact amount of compensation the CI received in exchange for the CI's involvement in this case. The government is not aware of any other material responsive to (d) in connection with the CI's engagement with ATF in this case. Information regarding the CI's involvement with other agencies and other investigations is irrelevant because the government will not be calling the CI as a witness.

The government is not aware of any material in its possession or control that is responsive to either (e) or (f), which seek information regarding pending charges against the CI and statements made to compel or encourage the CI's testimony, in connection with this case.

As to demand (g), which broadly seeks information regarding benefits provided to the CI, the government has disclosed all known benefits and payments to the CI regarding the CI's work in this case and the CI's work for ATF. The government is not aware of any material in its possession or control that is responsive to (g)(2)-(g)(5) or (g)(7) in relation to this case file that has not already been produced. As to (g)(8), the government has disclosed the name of the agent assigned to coordinate the CI's activities with respect to this case.

The government is not aware of any material in its possession or control that is responsive to (h) or (i), which seek information relating to third-party beneficiaries of the CI's work and actual implied threats made to the CI, regarding the CI's work in this case. Information regarding the CI's involvement with other agencies and other investigations is irrelevant because the government will not be calling the CI as a witness.

The government has produced all known information in its possession and control responsive to (j), which seeks information regarding how the crime was to be developed.

The government has produced all known information in its possession or control that is responsive to (m), which seeks impeachment information, in connection with this case.

As to (t), which seeks grand jury testimony, there is no responsive material related to this case. Information regarding any possible grand jury testimony by the CI relating to other investigations or cases is irrelevant. Additionally, the government will not be calling the CI as a witness.

The government has produced material that is responsive to (v), which seeks instructions relating to entrapment, in relation to this case, and will continue to produce any new responsive information relating to this case if the government becomes aware of any such information.

Finally, as to (ad), which seeks information relating to the CI's sources of knowledge, the government has produced all known information in its possession or control in connection to this case.

The government will continue to comply with its ongoing discovery obligations in this case and will produce any new

responsive information within its possession or control if it becomes aware of such information.

**B.    Defendant's Demands that Should be Denied as Overbroad or Irrelevant**

The government has disclosed that it does not intend to call the CI as a witness at trial.  Accordingly, to the extent defendant's demands seek CI information for impeachment purposes, they should be denied.  Demands (l), (m), (n), (o), (p), (q), (r), (s), (w), (x), (y), (z), and (aa) appear directed solely to information to be used for impeachment purposes and should be denied on that basis.  As to (s), the government has already disclosed the CI's criminal history, and as to (y), the government is not aware of any responsive information in its possession or control.

The government objects to demands (a) and (c), which call for premature disclosure of the CI's identity.  The CI has indicated that he/she would exercise the right to decline defendant's request for a pretrial interview.  See Bonilla, 615 F.2d 1264 (defendant is not entitled to have the CI produced in advance of trial).  Accordingly, given the extensive disclosures already made - including the report from a recent interview where the government asked the CI each of the many questions requested by defense counsel - here, as in Gonzalo Beltran, premature disclosure of the CI's identity would "lead to no testimony or other evidence that would [be] of material benefit to the defense."  Gonzalo Beltran, 915 F.2d at 489.  While providing no material benefit to defendant, it would endanger the CI and risk jeopardizing the CI's continued confidential work for numerous law enforcement agencies.  See id. (the government has a compelling interest in protecting the CI's safety and confidentiality).

Should this case proceed to trial, the government intends to disclose its witnesses one week before trial, pursuant to the Court's Trial Order.  See Order re Criminal Pretrial Motions, Trials, and Sentencings at ¶¶ 8-9.  The government does not intend to call the CI to testify at trial.  If, however, that position changes, the government will disclose the CI's name at that time.

To the extent these demands seek personal identifying information beyond the CI's identity (demands (a) and (c) seek the CI's address, date of birth, aliases, occupations, and employment addresses), the government firmly objects, as defendant has not demonstrated any need for such information and it falls well outside disclosure requirements.  See Johnson, 886 F.2d at 122 (defendant is not entitled to CI information on the basis of "mere suspicion" that it will prove helpful).  For the same reason, demand (g)(6), which requests the CI's confidential identifying number, should be denied.

The government objects to demands (g), (u), and (y), which seek information regarding the CI relating to other investigations.  To the extent this information is sought for impeachment purposes, the demands should be denied because the government will not call the CI as a witness.  To the extent the information is sought for non-impeachment purposes, it is irrelevant to this matter, and the demands should be denied.  Neither Brady nor Giglio requires the disclosure of neutral, irrelevant, speculative, or inculpatory evidence, and defendant's allegation that the requested information regarding other investigations might be material does not entitle her to an unlimited or unsupervised search of the government's files.  Ritchie, 480 U.S. 39, 59.  Demand (g)(9), which requests information relating to the CI's obligation to pay taxes on money provided by the

17

government, has no bearing whatsoever on the asserted defense and should be denied as irrelevant.

The government also objects to demand (k), which broadly seeks all law enforcement instructions provided to the CI. The government has disclosed all known contemporaneous communications relating to the CI which it currently is able to retrieve, and the government is attempting to recover others so that they can be produced. What is more, the government has asked the CI each of the questions requested by defense counsel relating to the alleged entrapment defense. Defendant has not demonstrated how all other law enforcement instructions would be material to her defense, and thus the demand should be denied.

Finally, the government objects to demands (z), (aa), (ab), and (ac), which seek premature disclosure of all witnesses the government intends to call at trial and further seek information well beyond required disclosures relating to anticipated witness testimony. The government will fully comply with its obligations under the Jencks Act and Giglio in a timely fashion,[3] and defendant has failed to identify how premature disclosure would be material to her defense.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Motion.

---

[3] The government is not obligated to produce any Jencks Act statements for a witness before that witness testifies. See, e.g., United States v. Mills, 641 F.2d 785, 789-90 (9th Cir. 1981).

18